UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JENNIFER BATES COMISKEY,

        CASE NO.: 9:18-cv-80429-KAM

    Plaintiff,
vs.

DITECH FINANCIAL, LLC,

    Defendant.
_____/

**DEFENDANT DITECH FINANCIAL, LLC's**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, DITECH FINANCIAL, LLC. ("Ditech" or "Defendant"), by and through the undersigned counsel, hereby moves to dismiss Plaintiff Jennifer Bates Comiskey's ("Plaintiff") Complaint [D.E. 1] for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and states the following in support thereof:

**Introduction**

Plaintiff's Complaint [D.E. 1] arises out of her attempt to enter into a modification of her mortgage loan and a later failed effort to reinstate it. More specifically, the Complaint involves six letters Plaintiff sent to Ditech, five of which relate to the loan modification, and the last of which involves a return of funds that were insufficient to reinstate the loan. The Complaint includes two counts: the first for violation of Regulation X, 12 C.F.R. 1024.35 ("Reg. X"), the implementing regulation of the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 ("RESPA"); the second for violation of the Florida Consumer Collections Practices Act ("FCCPA") Fla. Stat. §559.72(9).

Plaintiff's Complaint is subject to dismissal because Plaintiff's letters concerned loan modification, not the servicing (a specifically defined term) of her mortgage loan, and therefore

1

are not actionable under RESPA. Moreover, even were Ditech required Plaintiff's letters under RESPA, Ditech's responses thereto satisfied the requirements of Reg. X and RESPA. Plaintiff also does not successfully plead valid bases for pattern and practice damages under RESPA. Finally, Plaintiff's FCCPA count fails because the correspondence at issue in this matter – the responses to Plaintiff's letters – did not constitute debt collection.

### Salient Facts

On June 21, 2006, Plaintiff On October 12, 2012, Plaintiff executed a Note and Mortgage in the original principal amount of $279,000.00 in favor of AMPRO Mortgage, a Division of United Financial Corp. [D.E. 1, p. 18-37[1]] (the Note and Mortgage, collectively, evidence the "Loan"). Ditech is the current servicer of the Loan. [D.E. 1, ¶3]. Ditech's predecessor by merger Green Tree Servicing, LLC, filed a foreclosure against Plaintiff in the Fifteenth Judicial Circuit of Florida in a case captioned *Green Tree Servicing LLC v. Jennifer Bates, et al.*¸ and identified by Case Number 50-2012-CA-019022-XXXX-MB (the "Foreclosure"). [D.E. 1, ¶16]. Pursuant to the Plaintiff's Motion to Dismiss in the Foreclosure, the Foreclosure was dismissed on August 29, 2014. [D.E. 1, ¶17]. On May 3, 2016, Ditech sent to Plaintiff an offer for permanent modification of her mortgage loan (the "Modification Offer"). [D.E. 1, ¶19].

On June 3, 2016, Plaintiff sent Ditech correspondence claiming to be a Notice of Error pursuant to 12 C.F.R. §1024.35 ("Letter 1"). [D.E. 1, ¶20 and pp. 42-43]. In Letter 1, Plaintiff sought information about the recently issued Modification Offer. On June 20, 2016, Ditech responded ("Response 1") to Letter 1 by providing information about the amounts included within the Modification Offer and the documents supporting those amounts. [D.E. 1, ¶25 and pp. 48-66].

---

[1] Citations to Plaintiff's Complaint [D.E. 1] will reference the paragraph of the text when applicable. Exhibits to Plaintiff's Complaint will be referenced by specific page number within D.E. 1.

2

On July 14, 2016, Plaintiff sent a second correspondence ("Letter 2") to Ditech seeking clarification about amounts for attorney's fees included within the Modification Offer and a confirmation that the Modification Offer was still available. [D.E. 1, ¶27 and pp. 68-69]. On September 23, 2016, Ditech responded that it was re-evaluating the modification, and that an updated modification offer would be issued on completion. [D.E. 1, ¶34 and p. 73]. Later, on October 31, 2016, Plaintiff sent her third correspondence ("Letter 3") claiming that Ditech failed to reissue a modification. [D.E. 1, ¶35 and pp. 74-79]. On December 2, 2016, Ditech responded ("Response 3") that a new modification agreement excluding the amounts for attorney's fees was being issued. [D.E. 1, ¶39 and p. 83].

On April 10, 2017, Plaintiff sent a fourth correspondence ("Letter 4") claiming that Ditech has accepted "loan modification payments" yet is threatening foreclosure, and that Ditech failed to issue a corrected loan modification agreement with an updated balance.. [D.E. 1, ¶42 and pp. 84-85]. On May 8, 2017, Ditech responded ("Response 4") that information regarding the status of the corrected and finalized modification agreement was sent on March 28, 2017, that the foreclosure process was suspended on March 29, 2017, and that Ditech could accept payments on the mortgage loan via check "to be held in suspense until the corrected executed [modification] documents are returned to Ditech . . .at which time the funds will be applied to the account in accordance with the modification terms and effective date." [D.E. 1. p. 88].

On May 26, 2017, Ditech mailed the revised permanent modification offer (the "Revised Modification Offer"). [D.E. 1, ¶48]. On June 13, 2017, Plaintiff sent a fifth letter ("Letter 5") in which she requested "an explanation of the terms and details of the [Revised Modification Offer]." [D.E. 1, ¶49]. On August 23, 2017, Ditech responded ("Response 5") with an

3

explanation of the terms and details of the Revised Modification Offer and included a copy of the account's payment history. [D.E. 1, ¶53 and pp. 96-117].

Finally, on February 13, 2018, Plaintiff sent a sixth letter ("Letter 6") claiming that Ditech incorrectly failed to apply a check in the amount of $13,833.89 towards Plaintiff's loan and returned the funds to the Borrower without sending a notice of default and intent to accelerate. [D.E. 1, ¶54 and p. 137]. On March 8, 2018, Ditech responded ("Response 6") by denying that "it improperly returned the funds being held in suspense, denies it failed to provide a notice of default, and maintains it has properly serviced the loan." [D.E. 1. ¶58 and p.139].

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To avoid dismissal under Rule 12(b)(6), the factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. In making this plausibility determination, a court must accept the factual allegations as true; however, this "tenet ... is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Once an exhibit is attached to a pleading, it "is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court's analysis is 'limited primarily to the face of the complaint and the attachments thereto.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F. 3d 1364, 1368-69 (11th Cir. 1997). However, "the Court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's

4

claim and (2) undisputed. In this context, "undisputed" means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005). A court must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## Legal Argument

1. **Plaintiff's Letters concern Loan Modification and a Failed Reinstatement, not "Mortgage Servicing," and therefore do not subject Ditech to Liability under RESPA.**

Plaintiff brings her cause of action pursuant to 12 U.S.C. §2605 based on Ditech's alleged non-compliance with the Notice of Error procedures set forth in 12 C.F.R. §1024.35 in responding to the Letters identified in Plaintiff's Complaint. [D.E. 1, ¶15]. 12 U.S.C. §2605(e) obligates a servicer of a federally related mortgage loan to respond to "a qualified written request [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of the loan." (emphasis added). Further, under RESPA:

> [t]he term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). If a written inquiry does not relate to servicing, then that inquiry is not a QWR and a servicer is not required to respond to said inquiry. *See Smith v. Bank of Am. Home Loans,* 968 F. Supp. 2d 1159, 1170 (M.D. Fla. 2013) ("[a] loan servicer only has a duty to respond if the information request is related to loan servicing."); *Copeland v. Lehman Bros. Bank*, 2010 WL 2817173, at *3 (S.D. Cal. 2010).

This Court has previously held that "[t]o state a RESPA claim for failure to respond to a QWR, Plaintiff must sufficiently allege: "(1) Defendant is a loan servicer; (2) Defendant

5

received a QWR from Plaintiff; (3) the QWR relates to servicing of [a] mortgage loan; (4) Defendant failed to respond adequately; and (5) Plaintiff is entitled to actual or statutory damages." *Wesner v. Ocwen Loan Servicing, LLC*, 16-81476-CIV, 2016 WL 9649873, at *3 (S.D. Fla. Nov. 14, 2016), *aff'd*, 693 Fed. Appx. 867 (11th Cir. 2017) (*citing Porciello v. Bank of Am., N.A.*, No. 8:14–cv–1511–T–17AEP, 2015 WL 899942, at *3 (M.D. Fla. Mar. 3, 2015) (alteration added); *see Miranda v. Ocwen Loan Serv., LLC*, 148 F. Supp. 3d 1349, 1354 (S.D. Fla. 2015); *Correa v. BAC Home Loans Serv. LP*, No. 6:11–cv–1197–Orl–22DAB, 2012 WL 1176701, at *6 (M.D. Fla. Apr. 9, 2012) (citing *Frazile v. EMC Mortg. Corp.*, 382 Fed.Appx. 833, 836 (11th Cir. 2010)). Here, each of Letters 1-5 concern Plaintiff's attempts to modify her loan with Ditech. In addition, Letter 6 involves a purported effort by Plaintiff to reinstate her Loan. As explained below, the Letters therefore do not relate to servicing of a mortgage loan, as defined by RESPA, and thus Ditech had no duty to respond thereunder.

Letters 1, 2, 3, 4, and 5 each relate to efforts by Plaintiff to enter into a modification agreement of her Loan. Specifically, Letter 1 questioned whether the amounts stated in Ditech's Modification Offer were incorrect. Letter 2 contended that the amounts of the Modification Offer incorrectly included attorney's fees and costs from the Foreclosure and sought confirmation that the Modification Offer was still available for acceptance. Letter 3 claimed that Ditech failed to issue a corrected modification agreement without the amounts for attorney's fees. Letter 4 stated that Ditech was "threatening foreclosure" while accepting "loan modification payments" during the revision of the Modification Offer and that the revised modification agreement had not yet been issued. Finally, Letter 5 requested an explanation of the terms and conditions of the then-issued Revised Modification Offer. Each of these Letters 1-5, therefore, unambiguously relate to the Modification Offer and the Revised Modification Offer and not the servicing of the Loan.

6

Numerous courts, including this Court, have agreed that requests that relate to loan modification – like those in the Plaintiffs' Letters – do not relate to loan servicing. *See Wesner v. Ocwen Loan Servicing, LLC*, 16-81476-CIV, 2016 WL 9649873, at *5 (S.D. Fla. Nov. 14, 2016), *aff'd*, 693 Fed. Appx. 867 (11th Cir. 2017); *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1347 (S.D. Fla. 2016); *Chadee v. Ocwen Loan Servicing, LLC*, 243 F. Supp. 3d 1283, 1288 (M.D. Fla. 2017) ("[i]nquiries related to loan creation or modification do not qualify as requests related to the servicing of a loan."); *Gates v. Wachovia Mortgage, FSB*, No. 2:09-cv-02464, 2010 WL 2606511, at *3 (E.D. Cal. Jun. 28, 2010) ("Courts routinely interpret [RESPA] as requiring a QWR to relate to the *servicing* of a loan, rather than the *creation* or *modification* of a loan."); *Van Egmond v. Wells Fargo Home Mortg.*, SACV 12-0112 DOC, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) ("RESPA . . . only obligates loan servicers to respond to borrowers' requests for information relating to the servicing of their loans, which does not include loan modification information."); *Smallwood v. Bank of Am., N.A.*, 1:15-CV-336, 2015 WL 7736876, at *6-8 (S.D. Ohio Dec. 1, 2015); Bullock v. Ocwen Loan Servicing, LLC, CIV. PJM 14-3836, 2015 WL 5008773, at *10 (D. Md. Aug. 20, 2015); Mbakpuo v. Wells Fargo Bank, N.A., RWT-13-2213, 2015 WL 4485504, at *8 (D. Md. July 21, 2015); *Mayer v. EMC Mortg. Corp.*, 2:11-CV-147, 2014 WL 1607443, at *5 (N.D. Ind. Apr. 22, 2014). Likewise, the Eleventh Circuit has "distinguished between 'servicing' a loan and 'modifying' a loan, having affirmed *Sirote*'s finding that '[c]ourts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan.'" *Hudgins*, 192 F. Supp. 3d 1343, 1349 (S.D. Fla. 2016) (*quoting Sirote v. BBVA Compass Bank*, 857 F. Supp. 2d 1213, 1221 (N.D. Ala. 2010), *aff'd*, 462 Fed. Appx. 888 (11th Cir. 2012) (emphasis original) (internal citations omitted). Therefore, Letters 1-5, which relate to Plaintiff's attempts to modify the Loan

7

through the Modification Offer and the later Revised Modification Offer, do not relate to "servicing" and therefore cannot form the basis of a claim for violation of RESPA.

Moreover, the fact the Letter 4 claimed that Ditech has accepted "loan modification payments" yet is threatening foreclosure while the Modification Offer was being revised, does not mean that the Letters seek information related to servicing. The "loan modification payments" were not "scheduled periodic payments" as contemplated by 12 U.S.C. §2605((i)(3); instead, they were part of Plaintiff's attempt to remediate the defaulted status of her Loan by entering into a loan modification agreement. For example, in *Moore v. F.D.I.C.*, 08 C 596, 2009 WL 4405538, at *2 (N.D. Ill. Nov. 30, 2009), the plaintiffs sent an alleged QWR to the Bank "seeking information regarding the purported reinstatement of the mortgage loan and regarding the amount of charges purportedly due to the Bank." The *Moore* plaintiffs also sent another alleged QWR to seek clarification as to "payment amounts," and a third follow-up letter. *Id.* The court held that those letters "do not involve an inquiry into the servicer's receipt of a scheduled payment; rather, they relate to information about the status of a defaulted mortgage loan and delinquent mortgage payments." *Id.*

In the same vein, Plaintiff's Letters do not concern the receipt and application of regularly scheduled mortgage payments to her Loan; instead, they involve payments that Plaintiff contends were made pursuant to her application for a loan modification. Ditech's Response 5 makes this clear, as Ditech states:

> check payments that are mailed to the following address will be accepted and held in suspense until the corrected executed [modification agreement] documents are returned to Ditech following the pending issuance [of the modification agreement], at which time the funds will be applied to the account in accordance with the modification terms and effective date.

[D.E. 1, p. 88]. Indeed, such payments could not be "scheduled periodic payments . . . pursuant to the terms of any loan" within 12 U.S.C. §2605 because "[b]y definition, a loan modification is

a request to *alter* the terms of a loan; a request for modification is a request to no longer make payments pursuant to the existing terms of a loan." *Mbakpuo*, 2015 WL 4485504, at *8.

Lastly, Plaintiff's Letter 6, sent on February 13, 2018, differs from the first five letters in that it alleges a check in the amount of $13,833.89 was sent to Ditech, and that on December 12, 2017, Ditech "informed the borrower that the $13,833.89 was being returned to the borrower because the loan was in default and the amount enclosed was not enough to reinstate the loan." [D.E. 1, p. 91]. Plaintiff contends that Ditech erred by not applying the funds to reinstate the account and because Ditech "ha[d] never sen[t] a notice of default and intent to accelerate as required by the loan documents." *Id*. Once again, the issues raised in Letter 6 do not relate to servicing, but instead involve an attempt and a request by Plaintiff to reinstate the Loan's from its defaulted status. Like in *Moore*, this request, related to reinstatement of the Loan, "do[es] not involve an inquiry into the servicer's receipt of a scheduled payment; rather, they relate to information about the status of a defaulted mortgage loan and delinquent mortgage payments." *Moore v. F.D.I.C.*, 08 C 596, 2009 WL 4405538, at *2 (N.D. Ill. Nov. 30, 2009). For that reason, Letter 6 does not relate to "servicing" and a Response was not required under RESPA.

**2.     Even were Ditech Obligated to Respond to the Letters under RESPA, Liability Cannot Attach because the Responses were Compliant.**

In addition, even were a responses required and actionable under RESPA, Ditech's response to each of Plaintiff's Letters 1-6 complied with the requirements of 12 U.S.C. §2605(e)(2) and 12 C.F.R. 1024.35(e). Specifically, 12 U.S.C. §2605(e)(2) requires a loan servicer, in responding to a QWR relating to the servicing of a loan, to:

> **(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

> **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
>> **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Similarly, Reg. X's error resolution procedures 12 C.F.R. §1024.35(e)(1)(i) requires a servicer respond by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

In addition, although Plaintiff may be unsatisfied with responses given by Ditech, this does not create a cause of action under RESPA. Indeed the Eleventh Circuit recently held that: "[w]e agree that U.S. Bank's responses complied with RESPA by providing an explanation . . . as to why her loan modification was denied, even though she was understandably unsatisfied with the responses and found U.S. Bank's actions to be unreasonable." *Finster v. U.S. Bank Nat'l Ass'n*,

10

17-11662, 2018 WL 636603, at *3 (11th Cir. Jan. 31, 2018). In *Finster*, the Court concluded that "unreasonable conduct by a servicer does not necessarily amount to a violation of RESPA or Reg. X, even if their requirements seek to establish a baseline of reasonable conduct in many ways." *Id.* at *4.

Moreover, under RESPA, "a cause of action does not exist simply because a plaintiff is 'confused and/or unsatisfied with [an] answer.'" *Walker v. Branch Banking and Trust Company*, 237 F. Supp. 3d 1326, 1332 (S.D. Fla. 2017) (citing *Bates v. JP Morgan Chase Bank, N.A.*, 768 F.3d 1126, 1135 (11th Cir. 2014). "[RESPA] does not require the servicer to provide the resolution or the explanation desired by the borrower, it requires the servicer to provide a statement of its reasons." *Whittaker v. Wells Fargo Bank, N.A.*, 2014 WL 5426497, at *8 (M.D. Fla. Oct. 23, 2014). The Responses given by Ditech to each of the Letters examined in this context reveal that Ditech complied with its obligations, and, therefore, Plaintiff's cause of action under RESPA must be dismissed.

### *The First Letter*

On June 3, 2016, Plaintiff sent Letter 1 to Ditech, in which Plaintiff disputed the accuracy of the figures in the Modification Offer and made inquiries as to: (1) the calculation of eligible servicing expenses, (2) what the eligible servicing expenses are, and (3) why the Plaintiff would receive an offer for a permanent loan modification after applying for, performing under, and being approved for a final loan modification. [D.E. 1, pp. 42-43]. On June 20, 2016, Ditech responded to Letter 1 in Response 1 by providing an itemized breakdown of the calculation of the Modification Offer, explaining the calculation of the figures in the Modification Offer and the meaning of the terms used therein, including the payment history used to calculate the figures, and explaining why the Modification Offer was sent. [D.E. 1, ¶25 and pp. 48-66]. Ditech also

advised that "[a]t this time, the modification offer is still active however; if the required executed loan modification is not returned, the offer will be cancelled." [D.E. 1, p. 49]. In addition, Ditech provided the requisite contact information for its employee, and provided instructions for requesting additional documents and further questions. *Id.* Response 1 satisfied the requirements of RESPA and Reg. X by giving the Plaintiff a statement of its reasons for the Modification Offer. Specifically, Ditech offered an explanation of the calculation of the amounts included within the Modification Offer, an itemization of what those amounts were and documents to support their inclusion, and an explanation of why the Plaintiff continued to receive modification offers. Letter 1 therefore cannot form the basis of a cause of action under RESPA against Ditech.

### *The Second Letter*

Nearly a month later, on July 14, 2016, Plaintiff sent Letter 2 which likewise claimed to be a Notice of Error pursuant to 12 C.F.R. §1024.35. [D.E. 1, ¶27 and p.68-69]. In Letter 2, Plaintiff claims that Ditech – in a telephone call on July 14, 2016 – stated that: (1) attorney's fees from the foreclosure had been included in the Modification Offer within the Corporate Advances total, and (2) Plaintiff was no longer able to accept the Modification Offer. *Id.* In Letter 2, Plaintiff requested that Ditech provide a record of the transactions comprising the Corporate Advances, to explain why the Modification Offer was unavailable, and to confirm whether the Plaintiff would still be able to enter into a permanent loan modification. [D.E. 1, p. 69]. On September 23, 2016, Ditech stated in Response 2 that "[a]fter a secondary review, Ditech is in the process of re-evaluating the foreclosure fees and cost that were included in the [Modification Offer]. Upon completion of the re-evaluation, a new updated [permanent modification offer] will be issued for [Plaintiff's] execution. [D.E. 1, ¶34 and p. 73]. Ditech again supplied the requisite contact information to respond to Letter 2. *Id.* In this instance, Ditech again complied with

RESPA and Reg. X by providing Plaintiff with an explanation of the identified issues in the Modification Offer and explained that a new, modified modification would be issued to Plaintiff. For that reason, Letter 2 cannot form the basis of a claim under RESPA against Ditech.

### *The Third Letter*

On October 31, 2016, Plaintiff sent Letter 3 to Ditech. [D.E. 1, ¶35 p.74]. In Letter 3, Plaintiff claims that Ditech violated RESPA because it "failed to complete the appropriate corrections to Plaintiff's account and issue a corrected HAMP agreement as promised." [D.E. 1, ¶35]. On December 2, 2016, Ditech responded ("Response 3") that Ditech had "determined that $7,866.60 assessed through Corporate Advances were not to be part of the May 2016 modification," and that a new modification agreement was being reissued although "this may take up to sixty days to complete." [D.E. 1, ¶39 and p. 83]. Once again, Ditech included appropriate contact information for its employee. *Id.* Therefore, Ditech again complied by notifying Plaintiff that it was correcting the Modification Offer by specifically removing the previously assessed fees, stating that a revised modification agreement was being issued, and identifying the timeline for the revised modification.

### *The Fourth Letter*

On April 10, 2017, Plaintiff sent a Letter 4. [D.E. 1, ¶42 and p. 84]. In Letter 4, Plaintiff claimed that Ditech has accepted "loan modification payments" yet is threatening foreclosure, and that Ditech failed to issue a corrected loan modification agreement with an updated balance. [D.E. 1, pp. 84-85]. On May 8, 2017, Ditech sent Response 4 in which it stated that correspondence regarding the status of the corrected and finalized modification agreement was sent on March 28, 2017, that the foreclosure process was suspended on March 29, 2017, and that Ditech could accept payments on the mortgage loan via check to be held in suspense and applied in accordance with the completed modification, once issued and executed. [D.E. 1, pp. 91-92].

13

Ditech also included within its response a reason for the delay in issuing a corrected modification. *Id.* Finally, Ditech included the required contact information for its employee to enable Plaintiff to respond. *Id.* Once again, Ditech's response was compliant with the requirements of Reg. X and RESPA because it provided an explanation as to the delay in issuing a revised modification, reiterated that a revised modification was being issued, and explained the circumstances surrounding the foreclosure notice on the account. That these explanations were unsatisfactory to Plaintiff is insufficient to create liability under RESPA. *Walker v. Branch Banking and Trust Company*, 237 F. Supp. 3d 1326, 1332 (S.D. Fla. 2017) (citing *Bates v. JP Morgan Chase Bank, N.A.*, 768 F.3d 1126, 1135 (11th Cir. 2014). Thus, Plaintiff's cause of action under RESPA cannot be predicated upon Letter 4.

### The Fifth Letter

On June 13, 2017, Plaintiff sent Letter 5 in which Plaintiff requested "an explanation of the terms and details of the [Revised Modification Offer]." [D.E. 1, ¶49]. On August 23, 2017, Ditech sent Response 5 with an explanation of the terms and details of the Revised Modification Offer and included a copy of the account's payment history. [D.E. 1, ¶53 and pp.96-117]. Notably, the account payment history included with Response 5 included information reflecting the breakdown of the amounts owed on the account by which the Revised Modification Offer was calculated, and responding to Plaintiff's request for such information in Letter 5. *Id.* Once again, therefore Ditech satisfied RESPA by providing the requested "terms and details" of the Revised Modification Offer, and therefore a cause of action under RESPA cannot be predicated on same.

### The Sixth Letter

On February 13, 2018, Plaintiff Letter 6 claiming that Ditech incorrectly failed to apply a check in the amount of $13,833.89 towards Plaintiff's loan and returned the funds to the

Borrower without sending a notice of default and intent to accelerate. [D.E. 1, ¶54 and p.136]. Plaintiff stated that: "Ditech should have accepted the check . . . as a reinstatement of the loan in order to correct their error" and asked Ditech to remedy the error by accepting and applying the Plaintiff's next check. *Id.* On March 8, 2018, Ditech sent Response 6 that "denies it improperly returned the funds being held in suspense, denies it failed to provide a notice of default, and maintains it has properly serviced the loan." [D.E. 1, p. 139]. Specifically, Ditech responded that (1) it had provided a Notice of Default, (2) attached a copy of the Notice of Default to Response 6, (3) returned the funds because the amounts were insufficient to reinstate the loan, and (4) provided a copy of the payment history. *Id.*

In support of these conclusions, Ditech explained its reasoning and supplied the documentation upon which it was based. *Id.* Ditech also provided the requisite name, phone number, and email of the employee to provide borrower assistance and respond to additional questions and concerns. *Id.* Ditech's Response 6 therefore complied with the requirements of both RESPA and Reg. X. Importantly, the fact that Ditech did not implement the reinstatement demanded by Plaintiff does not create RESPA liability. Once again, "[RESPA] does not require the servicer to provide the resolution or the explanation desired by the borrower, it requires the servicer to provide a statement of its reasons." *Whittaker v. Wells Fargo Bank, N.A.*, 2014 WL 5426497, at *8 (M.D. Fla. Oct. 23, 2014). Ditech provided a sufficient statement, as it did in its Responses 1-5. For this reason, Ditech complied with RESPA and Reg. X in its Responses 1-6, and Plaintiff's Count 1 must be dismissed for this alternative reason.

### 3. Plaintiff has Failed to State a Cause of Action as to "Pattern and Practice Violations."

In the Complaint, Plaintiff also attempts to allege that she is entitled to damages based on a "pattern and practice" of violations under RESPA. [D.E. 1, ¶¶64-67]. Plaintiff refers to pattern

and practice violations relating to "Counts Two through Seven" of her Complaint; however, Count 2 of Plaintiff's Complaint relates to claims based on the FCCPA, and there are no Counts 3-7 included within the Complaint. Nonetheless, to the extent that these allegations are incorporated into Count 1 of Plaintiff's Complaint for RESPA, they do not support pattern and practice damages.

RESPA provides for damages to individuals for: "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. §2605(f)(1)(B). Here, Plaintiff has failed to adequately plead a pattern or practice of non-compliance with RESPA because the allegations of its Complaint are based upon complaints to the CFPB concerning "Loan Modification," and not based on QWRs related to servicing within the scope of RESPA.

Specifically, in support of the pattern and practice allegations, Plaintiff attached to her Complaint fifteen (15) consumer complaints to the CFPB against Ditech regarding loan modifications. [D.E. 1, ¶65 and pp. 187-248]. These consumer complaints do not support pattern and practice violations of RESPA because the identified complaints explicitly relate to the issue of "loan modifications," and not Plaintiff's failure to respond to QWRs related to servicing as required by 12 U.S.C. §2605. Stated differently, the RESPA claims at issue in Count 1 are not based upon Plaintiff's handling of Plaintiff's loan modification itself; they instead center on whether Ditech satisfied any obligation (to the extent such obligation existed) to respond to Plaintiff's Letters under RESPA and Reg. X. Consumer complaints to the CFPB related to loan modification are irrelevant to the RESPA and Reg. X issues that comprise Count 1. Likewise, and as set forth more fully above, Plaintiff's reliance on the Letters themselves in support of pattern and practice violations is misplaced because responses to the Letters were not mandated

16

by RESPA and because Ditech's responses to those communications did not otherwise run afoul of RESPA. Therefore, this Court must dismiss Plaintiff's Complaint to the extent it seeks additional damages pursuant to an alleged pattern and practice of non-compliance under RESPA.

**4.      The Letters are not debt collection for purposes of the FCCPA.**

Plaintiff's Second Count under the FCCPA claims that Ditech "attempted to enforce a consumer debt from Plaintiff with knowledge that the debt is not legitimate in violation of Fla. Stat. §559.72(9)." [D.E. 1, ¶88]. Plaintiff's basis for this assertion is that "Ditech was attempting to collect amounts for attorney's fees in the Foreclosure." *Id*. While Plaintiff does not provide further detail as to how Ditech made such collection efforts, ostensibly these allegations rest upon Responses 1-6 as Plaintiff incorporates those allegations into its FCCPA count. [D.E. 1, ¶84]. Because Responses 1-5 related to the Loan Modification each of those Responses were not debt collection under the FCCPA. In addition, Letter 6, relating to Plaintiff's failed attempt to reinstate her Loan, likewise did not constitute debt collection. Count 2 of Plaintiff's Complaint must therefore be dismissed.

In order for communications of Ditech to Plaintiff to violate of the FCCPA, Plaintiff must demonstrate that a communication was related to the collection of her debt. *See* Fla. Stat. § 559.55(5); *see also Nordwall v. PNC Mortg.*, No. 2:14-cv-747-FtM-CM, 2015 WL 4095350, at *3-5 (M.D. Fla. Jul. 7, 2015); *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010). For a communication to be debt collection, the "animating purpose of the communication must be to induce payment by the debtor." *Grden v. Leikin Ingber & Winters, PC*, 643 F.3d 169, 173 (6th Cir. 2011). In applying the FCCPA, Florida law mandates that: "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla.Stat. §559.72(5). Here, Ditech's communications in Responses 1-5 related to the modification of Plaintiff's Loan, and

17

each of Responses 1-6 otherwise responded to concerns Plaintiff had related to modification and reinstatement. Such correspondence does not constitute debt collection.

Construing the FCCPA's federal parallel, the Fair Debt Collections Practices Act, courts have held that communications relating to a loan modification offer are not considered debt collection for purposes of the FDCPA. *See Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4369424 (M.D. Fla. 2016) (Judge Howard held that a "Loan Modification Package was not a communication in connection with the collection of a debt."); *Farquharson v. Citibank, N.A.*, 664 Fed. Appx 793, fn 6 (11th Cir. 2016); *Marshall v. Deutsche Bank Nat'l Trust Co.*, No. 4:10CV00754-BRW, 2011 WL 345988, at *3 (E.D. Ark. Feb. 1, 2011), *aff'd*, 445 Fed.Appx 900 (8th Cir. 2011) (holding that "letters regarding loan modification were attempts to restructure the debt instrument and lower the payments, not a demand for payment."). In addition, courts have held that communications that do not demand payment and relate to debt restructuring do not seek collection of a debt, and therefore cannot give rise to an FDCPA violation. *See Kennedy v. Wells Fargo Bank, N.A.*, No. CV 11-4635, 2011 U.S. Dist. LEXIS 111013, 2011 WL 4526085, at *3 (C.D. Cal. Sept. 28, 2011) ("Contact by a lender or loan servicer for the purpose of restructuring payments on a debt is not 'collection of a debt' for the purposes of the FDCPA when the lender or servicer does not demand payment for past amounts **[*29]** owed."); *Marshall v. Deutsche Bank Nat. Trust Co.*, No. 10-CV-754, 2011 U.S. Dist. LEXIS 10701, 2011 WL 345988, at *3 (E.D. Ark. Feb. 1, 2011) ("The letters regarding loan modification were attempts to restructure the debt instrument and lower the payments, not a demand for payment…Thus the communications…do not appear to be communications to collect a debt that could give rise to a FDCPA violation."), *aff'd*, 445 F. App'x 900 (8th Cir. 2011); *see also Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998). This Court must give these decisions

"due consideration and great weight" in likewise considering whether the Responses constitute collection of a debt. Fla.Stat. §559.72(5). Because Responses 1-5, discussed more fully above, each related to Plaintiff's attempt to enter into a loan modification and Response 6 related to Plaintiff's attempt to reinstate the Loan, each do not qualify as "debt collection" for purposes of the FCCPA.

Indeed, the substance of the Responses at issue compels the conclusion that the Responses are not communication "in connection with the collection of any debt." *See, e.g. Singha v. BAC Home Loans Servicing, L.P.*, 564 Fed.Appx. 65, 71 & n.2 (5th Cir. 2014) (refusing to announce a broad rule that "modification discussions may never be debt collection activities" but concluding that the "communications in connection with negotiating the modification of a debt" at issue were "not communications in connection with *collection* of a debt"); *see also Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-CV-1349-J-34PDB, 2016 WL 4369424, at *13 (M.D. Fla. Aug. 16, 2016) (concluding that a "Loan Modification Package was not a communication in connection with the collection of a debt"). Ditech's Responses at issue here simply do not demand payment of the debt from Plaintiff. Instead, each of the Responses seeks to respond to inquiries raised by Plaintiff as to the Modification Offer and the Revised Modification Offer. Response 6 related to the Borrower's concern about amounts returned following her attempt to reinstate the Loan. On their face, the Responses do not involve "debt collection," and therefore are outside the ambit of the FCCPA. Plaintiff's Count 2 must therefore be dismissed.

## Conclusion

WHEREFORE, for the reasons set forth herein, Ditech requests that the Court dismiss Plaintiff's Complaint [D.E. 1] with prejudice, and without leave to amend, and Order any further relief the Court deems just and proper.

Dated: May 21, 2018.

                                                  McGLINCHEY STAFFORD

                                                  */s/ Peter J.Maskow*
                                                  Peter J. Maskow, Esq.
                                                  Florida Bar # 91541
                                                  N. Mark New, II, Esq.
                                                  Florida Bar # 476773
                                                  One East Broward Blvd., Suite 1400
                                                  Fort Lauderdale, FL 33301
                                                  (954) 356-2509 (telephone)
                                                  (954) 446-1643 (facsimile)
                                                  pmaskow@mcglinchey.com
                                                  mnew@mcglinchey.com
                                                  jruiz@mcglinchey.com

                                            ***ATTORNEYS FOR DEFENDANT***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished, electronically, through the CM/ECF system this 21st day of May, 2018, to the following:

Lisa Hailey, Esq.
**JULIANA GAITA, P.A.**
*Attorneys for Plaintiff*
2701 Boca Raton Boulevard, Suite 107
Boca Raton, FL 33431
eservice@gllawcenter.com

                                                 */s/ Peter Maskow*
                                                  Attorney.